No. 25-1335

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

————————

IN RE: DZHOKHAR A. TSARNAEV,
PETITIONER

————————

ON PETITION FOR WRIT OF MANDAMUS

————————

REDACTED ANSWER OF THE UNITED STATES
TO PETITION FOR A WRIT OF MANDAMUS

————————

LEAH B. FOLEY
UNITED STATES ATTORNEY

MARK T. QUINLIVAN
ASSISTANT U.S. ATTORNEY
JOHN JOSEPH MOAKLEY U.S. COURTHOUSE
1 COURTHOUSE WAY
SUITE 9200
BOSTON, MASSACHUSETTS 02210
(617) 748-3606

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

PRELIMINARY STATEMENT .........................................................1

STATEMENT OF THE CASE.............................................................1

    A.    This Court's 2024 Decision.................................................1

    B.    Proceedings on Remand .....................................................2

          1.    Tsarnaev's assertion that reassignment was required.................2

          2.    The August 2024 status conference ...........................................3

          3.    The recusal pleadings.................................................................4

          5.    Judge O'Toole's order denying the motion for recusal and disclosure ...............................................................................7

ARGUMENT .....................................................................................9

I.    TSARNAEV'S PETITION FOR A WRIT OF MANDAMUS SHOULD BE DENIED ...............................................................9

    A.    Legal Standards .................................................................9

    B.    None of the Remarks Tsarnaev Identifies Creates an Appearance of Partiality......................................................11

          1.    The 2016 BC Law School forum .............................................11

          2.    The 2016 AO panel discussion .................................................19

          3.    The 2023 "Criminal" podcast ...................................................21

4.    Remarks during the trial and sentencing hearing .....................23

██  ████████████████████████████████████████

████████████████████████████████████████████████

6.    Denial of motion for disclosure .................................................28

C.    The Other Mandamus Grounds Do Not Support Granting
the Writ ...................................................................................................29

CONCLUSION ......................................................................................................32

CERTIFICATE OF COMPLIANCE ........................................................................33

CERTIFICATE OF SERVICE ................................................................................34

# TABLE OF AUTHORITIES

## CASES

*Cheeves v. Southern Clays, Inc.*,
  797 F. Supp. 1570 (M.D. Ga. 1992) ....................................................28

*Coinbase, Inc. v. Bielski*,
  599 U.S. 736 (2023)............................................................................31

*Griggs v. Provident Consumer Discount Co.*,
  459 U.S. 56 (1982)..............................................................................31

*In re Boston's Children First*,
  244 F.3d 164 (1st Cir. 2001).........................................................*passim*

*In re Bulger*,
  710 F.3d 42 (1st Cir. 2013)........................................................9, 10, 11

*In re Cargill, Inc.*,
  66 F.3d 1256 (1st Cir. 1995)...............................................................10

*In re Charges of Judicial Misconduct*,
  769 F.3d 762 (D.C. Cir. 2014) ............................................................18

*In re Martinez-Catala*,
  129 F.3d 213 (1st Cir. 1997)..........................................................28, 29

*In re United States*,
  441 F.3d 44 (1st Cir. 2006)..................................................................30

*In re United States*,
  666 F.2d 690 (1st Cir. 1981)..........................................................10, 24

*Kerr v. United States Dist. Court for the Northern Dist. of Cal.*,
  426 U.S. 394 (1976)............................................................................10

*Labor Relations Div. of Const. Indus. of Mass., Inc. v. Teamsters Local 379*,
  156 F.3d 13 (1st Cir. 1998)..................................................................23

*Lopez Dominguez v. Gulf Coast Marine & Assocs., Inc.*,
  607 F.3d 1066 (5th Cir. 2010) .............................................................31

iii

*Ministeri v. Reliance Std. Life Ins. Co.,*
    42 F.4th 14 (1st Cir. 2022)......................................................................29

*Powers v. Ohio,*
    499 U.S. 400 (1991)..............................................................................15

*Starski v. Kirzhnev,*
    682 F.3d 51 (1st Cir. 2012)....................................................................13

*United States v. Caramadre,*
    807 F.3d 359 (1st Cir. 2015)..................................................................26

*United States v. Mehanna,*
    No. 09-cr-10017-GAO ...............................................................11, 12, 13

*United States v. Microsoft Corp.,*
    253 F.3d 34 (D.C. Cir. 2001)..................................................................17

*United States v. Moran,*
    393 F.3d 1 (1st Cir. 2004)......................................................................23

*United States v. Rathbun,*
    98 F.4th 40 (1st Cir. 2024)....................................................................26

*United States v. Siegelman,*
    640 F.3d 1159 (11th Cir. 2011) .............................................................30

*United States v. Snyder,*
    235 F.3d 42 (1st Cir. 2000)....................................................................10

*United States v. Tsarnaev,*
    96 F.4th 441 (1st Cir. 2024).........................................................1, 2, 11

*United States v. Velazquez-Fontanez,*
    6 F.4th 205 (1st Cir. 2021)....................................................................29

*United States v. Whorley,*
    550 F.3d 326 (4th Cir. 2008) .................................................................31

## STATUTES AND RULES

28 U.S.C. §455(a) ...................................................................1, 3, 4, 8, 9, 28

28 U.S.C. §455(e) ................................................................................8, 28

D. Mass. Local Rule 40.1(*l*)...............................................................2, 3, 8

D. Mass. Local Rule 40.1(*l*)(2) ...............................................................2, 8

## OTHER AUTHORITIES

6A C. Wright, A. Miller, E. Cooper, & C. Struve,
   *Federal Practice and Procedure*, §3949.1 (5th ed. 2019)....................................31

Code of Conduct for United States Judges, Canon 3(A)(6),
   175 F.R.D. 363 (1988) .............................................................4, 5, 17, 18, 21, 22

*In Memoriam: Sandra J. O'Connor – Justice O'Connor as the Good Judge*,
   137 HARV. L. REV. 1809 (May 2024) ....................................................13

https://www.wgbh.org/news/local/2016-04-07/tsarnaev-trial-judge-revisits-issues-
   of-race-the-death-penalty-and-fairnessess ........................................................13

https://www.wbur.org/morningedition/2016/04/07/judge-tsarnaev-bclaw-
   forum ...................................................................................................30

https://davidlat.substack.com/p/judge-jed-rakoff-sdny-scotus-supremecourt-
   podcast-interview ................................................................................14

https://www.uscourts.gov/news/2017/03/02/insidelook-jury-experience ..........20, 30

https://thisiscriminal.com/episode-218-did-we-get-it-right-5-12-2023....................30

## PRELIMINARY STATEMENT

Dzhokhar A. Tsarnaev petitions for a writ of mandamus requiring the recusal of Judge George A. O'Toole, Jr. under 28 U.S.C. §455(a), which provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The petition should be denied. Tsarnaev has failed to show, clearly and indisputably, that Judge O'Toole's recusal is required under §455(a), and he also has failed to show that the other mandamus factors support granting the writ.

## STATEMENT OF THE CASE

### A.    This Court's 2024 Decision.

On March 21, 2024, a divided panel of this Court vacated Judge O'Toole's ruling denying Tsarnaev's motion to strike Jurors 138 and 286 for cause and remanded for an investigation into the potential bias of those jurors. *See United States v. Tsarnaev*, 96 F.4th 441, 449-65, 475 (1st Cir. 2024). In doing so, this Court indicated its expectation that Judge O'Toole would conduct those proceedings on remand: "In this case, we have no doubt that the able district court judge can do what judges regularly do – form a considered opinion about the sufficiency of the jurors' explanations once those explanations are given and explored." *Id.* at 464.

1

B.     **Proceedings on Remand**.

1.     **Tsarnaev's assertion that reassignment was required.**

After Judge O'Toole scheduled a status conference, Tsarnaev's counsel wrote a letter stating that it was their "understanding" that this Court's remand order triggered D. Mass. Local Rule 40.1(*l*)(2), and, because none of the exceptions to that rule assertedly applied, it was their "understanding that the case should be returned to the Clerk for reassignment." [Exh.B. at B1-B2].[1]  Counsel added that if Judge O'Toole was "not inclined to refer the case to reassignment," they would move for his recusal under §455(a).   [Exh.B. at B2].

The government responded that Local Rule 40.1(*l*) did not apply because this Court did not order a new trial, enter a final judgment, or issue a formal mandate. [Exh.C. at C3].   Even assuming *arguendo* that Local Rule 40.1(*l*)(2) applied, reassignment was not required, the government argued, because this Court indicated that Judge O'Toole should conduct the proceedings on remand.   [Exh.C. at C3-C4 (quoting *Tsarnaev*, 96 F.4th at 464)].   The government also argued that any recusal motion would appear to be meritless.   [Exh.C. at C4].

---

[1] Docket entries are cited as "[D.__]."   The Petition is cited as "(Petition at __)," and the exhibits attached thereto are cited by letter and page number, *i.e.*, "[Exh.A. at A1]."

### 2.      The August 2024 status conference.

On August 21, 2024, Judge O'Toole held a status conference and said at the outset that he found no merit to Tsarnaev's suggestion that the case should be reassigned under Local Rule 40.1(*l*).   [Exh.D. at D4].   Tsarnaev's counsel thereupon stated their intention to file a recusal motion under §455(a), and Judge O'Toole set a briefing schedule.   [Exh.D. at D6-D8, D10-D12].

Judge O'Toole further ordered that "no one, no one is to contact the jurors in question" because they were "citizens, and they deserve to be respected until otherwise noted," and Tsarnaev's counsel assured Judge O'Toole that the defense team would abide by that order:

> **THE COURT:**   All right.   The other matter is this involves, will involve perhaps some intrusion on the private lives of the two jurors in question, and so it is my order to everybody that no one, no one is to contact the jurors in question.
>
> The lawyers in the case obviously know who they are.   There should be no explanation to the wider world as to who they are. They're citizens, and they deserve to be respected until otherwise noted.
>
> **[COUNSEL]:**   Yes, your Honor, on that note, I would say, just confirm as soon as the Court of Appeals's order came out, we conferred with the government, and we all agreed that we would have no contact whatsoever directly or through the agents with the jurors, and we've held to that.

[Exh.D. at D9-D10].   At no time during the status conference did Tsarnaev's counsel seek clarification of the scope of this no-contact order.

3

### 3.    The recusal pleadings.

On September 3, 2024, Tsarnaev moved for Judge O'Toole's recusal under §455(a) and for disclosure.    [D.1814; Exh.E. at E1-E24].    In a supporting memorandum, Tsarnaev argued that recusal was required based on public comments Judge O'Toole had made about the case on the following occasions:

- A forum at the Boston College Law School held on April 6, 2016 (hereafter the "BC Law School forum").

- A panel discussion sponsored by the Administrative Office of the U.S. Courts held on November 17, 2016 (hereafter the "AO panel discussion").

- A "*Criminal*" podcast episode entitled "Did We Get It Right?" that aired on May 12, 2023 (hereafter the "'*Criminal*' podcast").

[Exh.E. at E4-E20].    Tsarnaev argued that Judge O'Toole's comments during these events required recusal because they would lead a reasonable person to question his impartiality, and because they contravened Canon 3(A)(6) of the Code of Conduct for United States Judges, this Court's decision in *In re Boston's Children First*, 244 F.3d 164 (1st Cir. 2001), and the constitutional requirement that a judge satisfy the appearance of impartiality.    [Exh.E. at E16-E19].    Tsarnaev further argued that Judge O'Toole's remarks to the jury during the trial and sentencing hearing "buttress the case for recusal."    [Exh.E. at E11-E12, E20].    Finally, Tsarnaev argued that

Judge O'Toole should disclose all public comments made about the case and the substance of any *ex parte* communications with the jurors.    [Exh.E. at E21-23].

The government responded that Tsarnaev's motion for recusal should be denied because it was untimely and lacked merit.    [Exh.F. at F1-F19].    With respect to timeliness, the government observed that the 2023 "*Criminal*" podcast aside, Judge O'Toole made all the comments in controversy in 2015 or 2016 and they were in the public domain for years, yet Tsarnaev had offered no justification for why he had not raised his motion earlier.    [Exh.F. at F3-F6].    On the merits, the government argued that no reasonable person would doubt Judge O'Toole's impartiality based on his cited remarks nor had he contravened Canon 3(A)(6) by making them, as his comments were not "on the merits" of this case and, in any event, because that canon does not apply to "explanations of court procedures, or to scholarly presentations made for purposes of legal education."    [Exh.F. at F6-F15 (quoting Code of Conduct for United States Judges, Canon 3(A)(6), 175 F.R.D. 363, 367 (1988))].    The government also argued that Judge O'Toole's remarks did not run afoul of *In re Boston's Children First* – where this Court required recusal "based on the particular events in, and character of, a highly idiosyncratic case" – or the constitutional requirement that a judge satisfy the appearance of impartiality. [Exh.F. at F15 (quoting *In re Boston's Children First*, 244 at 172)].    The government further argued that Tsarnaev had badly misconstrued Judge O'Toole's

5

remarks to the jury during the trial and sentencing hearing, taken them out of context, or both.   [Exh.F. at F15-F19].   Finally, the government argued that Tsarnaev's request for disclosure should be denied as an unwarranted "fishing expedition." [Exh.F. at F19-F20].

Tsarnaev argued in a reply that his motion was timely because he could not have brought it while the case was on appeal and reiterated his position that Judge O'Toole should recuse or provide the requested disclosures.   [Exh.G. at G1-G10].



[redacted]

[redacted]

[redacted]

**5. Judge O'Toole's order denying the motion for recusal and disclosure.**

On March 28, 2025, Judge O'Toole denied Tsarnaev's motion for recusal and disclosure in an electronic order. [Exh.A. at A1-A2]. He began by noting that

Local Rule 40.1(*l*)(2) was pertinent because "it is apparent that the Court of Appeals intended that this Court investigate the potential bias of the two jurors at issue" and "[r]ecusal would be at odds with the direction of the Court of Appeals."   [Exh.A. at A2].[2]

Judge O'Toole next determined that recusal was not required under §455(a) because no reasonable person would doubt his impartiality based on his remarks:

> As to recusal under 28 U.S.C. § 455(a), the defendant has not met the high threshold required. Contrary to the defendant's characterizations and excerpted quotes, a review of the comments as a whole and in context supports the conclusion that an objective, knowledgeable member of the public would not find a reasonable basis for doubting my ability to follow my oath to faithfully apply the law, including the instructions of the First Circuit, and impartially preside over an investigation into the voir dire answers and potential bias of the jurors.

[Exh.A. at A2].

Finally, Judge O'Toole denied Tsarnaev's motion for disclosure and indicated that he found meritless Tsarnaev's "intimat[ion] that this Court has an obligation to respond to a party's discovery requests, even where they are not made in connection with any waiver."   [Exh.A. at A2 (citing 28 U.S.C. §455(e)].

---

[2] Although Judge O'Toole said that "recusal" would conflict with this Court's directions on remand, he apparently meant "reassignment," as Local Rule 40.1(*l*) deals with *reassignment*, not recusal.   And as noted above, after this Court remanded to Judge O'Toole, Tsarnaev's counsel had urged that reassignment was required under Local Rule 40.1(*l*)(2).   [Exh.B. at B1-B2].

<u>**ARGUMENT**</u>

I.    **TSARNAEV'S PETITION FOR A WRIT OF MANDAMUS SHOULD BE DENIED.**

Tsarnaev contends (Petition at 15-32) that this Court should grant his petition for a writ of mandamus requiring Judge O'Toole's recusal.   This Court should deny the requested writ because Tsarnaev has failed to show, clearly and indisputably, that Judge O'Toole's recusal is required and because the other mandamus factors do not support granting the writ.

A.    <u>**Legal Standards.**</u>

When presented with a petition for a writ of mandamus seeking a district judge's recusal, this Court has noted that the resolution of that issue "calls for synthesizing two legal standards."   *In re Bulger*, 710 F.3d 42, 45 (1st Cir. 2013). The first is the statutory mandate that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."   28 U.S.C. §455(a).   As this Court has explained, §455(a) "seeks to balance two competing policy considerations: first, that courts must not only be, but seem to be, free of bias or prejudice, and second, the fear that recusal on demand would provide litigants with a veto against unwanted judges." *In re Boston's Children First,* 244 F.3d at 167 (cleaned up).   Recusal under §455(a) thus is appropriate "only if the facts provide what an objective, knowledgeable

9

member of the public would find to be a reasonable basis for doubting the judge's impartiality." *In re United States*, 666 F.2d 690, 695 (1st Cir. 1981).

When reviewing a district court's decision declining to recuse after a final judgment has been rendered, this Court "enquire[s] only whether the district court abused its discretion." *In re Bulger*, 710 F.3d at 45. That means that this Court asks "not whether we would have decided as did the trial court, but whether that decision cannot be defended as a rational conclusion supported by a reasonable reading of the record." *United States v. Snyder*, 235 F.3d 42, 46 (1st Cir. 2000).

Tsarnaev's challenge to Judge O'Toole's denial of his recusal motion arises not on direct appeal but on a petition for a writ of mandamus, thus placing "an even more exacting burden on those who request it." *In re Bulger*, 710 F.3d at 45. "The remedy of mandamus is a drastic one, to be invoked only in extraordinary situations," and a petitioner seeking mandamus "must satisfy the burden of showing that his right to issuance of the writ is clear and indisputable." *Kerr v. United States Dist. Court for the Northern Dist. of Cal.*, 426 U.S. 394, 402 (1976) (cleaned up). A mandamus petitioner must also show irreparable harm and "demonstrate that, on balance, the equities favor issuance of the writ." *In re Bulger*, 710 F.3d at 45. A writ of mandamus thus is an exceptional remedy and should "be used stintingly and brought to bear only in extraordinary situations." *In re Cargill, Inc.*, 66 F.3d 1256, 1259 (1st Cir. 1995).

10

"Applying the mandamus rule to the substantive recusal standard thus requires a doubly deferential review: relief for the defendant is only warranted if it is clear and indisputable that no reasonable reading of the record supports a refusal to recuse." *In re Bulger*, 710 F.3d at 45 (cleaned up). Tsarnaev has not come close to making that demanding showing here.

**B.    None of the Remarks Tsarnaev Identifies Creates an Appearance of Partiality.**

Tsarnaev contends (Petition at 15-32) that he is entitled to a writ of mandamus requiring recusal because Judge O'Toole's public comments about the case create an appearance of partiality, and because his statements and actions in the courtroom "buttress the claim for recusal." Those claims lack merit.

**1.    The 2016 BC Law School forum.**

On April 7, 2016, Judge O'Toole discussed issues regarding trial management in this case and *United States v. Mehanna*, No. 09-cr-10017-GAO at the BC Law School forum. [Exh.E. at E27-E36]. Judge O'Toole prefaced his remarks by stating that "I'm not going to talk about the merits of the *Mehanna* or the *Tsarnaev* cases," but would talk about "some issues regarding the trial management that arise in what we might call high-profile cases, and particularly issues affecting jury management," including "how in the two cases we managed the mechanics and the logistics of the trials to assure that the defendant, in each case, was given what the

11

Sixth Amendment guarantees, a public trial that is fully fair."     [Exh.E. at E27-E28].

Judge O'Toole adhered to that approach, addressing at a high level of generality how

he managed this case and *Mehanna*.     [Exh.E. at E28-E34].     Based on those

remarks, no objective, knowledgeable member of the public would question Judge

O'Toole's impartiality.

None of the scattered remarks that Tsarnaev plucks out from an eight-page,

single-spaced transcription of the event show otherwise.     Tsarnaev first highlights

(Petition at 6-7) the prefatory remarks quoted above, in which Judge O'Toole stated,

"We managed the mechanics and logistics of the trials <u>to assure that the defendant,</u>

<u>in each case, was given what the Sixth Amendment guarantees, a public trial that is</u>

<u>fully fair</u>."     [Exh.E. at E27-E28 (emphasis in Petition)].     He also highlights

(Petition at 8) a news article about the event that reported that Judge O'Toole "was

asked if he has any lingering questions or doubts about the Boston Marathon trial

outcome.     He said no.     He had moved on."[3]     Tying these remarks together,

Tsarnaev asserts (Petition at 16) that Judge O'Toole "has averred that Tsarnaev got

a 'fully fair' trial, leaving him with no 'lingering questions or doubts' about the . . .

outcome."

---

[3]     *See*     https://www.wgbh.org/news/local/2016-04-07/tsarnaev-trial-judge-revisits-issues-of-race-the-death-penalty-and-fairness.

This assertion grossly mischaracterizes Judge O'Toole's remarks. He did not "aver" that Tsarnaev had received a "fully fair" trial. To the contrary, Judge O'Toole stated that he would *not* comment on the merits of any issues in this case, and instead would comment only on issues of trial management he employed "to assure that the defendant, in [this] case [and *Mehanna*], was given what the Sixth Amendment guarantees, a public trial that is fully fair." [Exh.E. at E28]. This was simply a statement of what Judge O'Toole *aspired* to achieve in both cases, and no reasonable person would have understood it otherwise.

Judge O'Toole, moreover, did not affirmatively state that he had no "lingering questions or doubts about the … outcome." Rather, according to a news article, he simply answered, "no," and "I've moved on," when asked whether he had any "lingering questions or doubts" about the outcome of this case. This answer is consistent with a widely held view about the judicial craft: "Fiat justitia ruat caelum—let justice be done though the heavens fall—is an important legal maxim, but it includes the need to move on to the next case and provide justice to the next litigant in line on a crowded docket." *Starski v. Kirzhnev*, 682 F.3d 51, 56 (1st Cir. 2012); *see also* Stewart J. Schwab, *In Memoriam: Sandra J. O'Connor – Justice O'Connor as the Good Judge*, 137 HARV. L. REV. 1809, 1811 (May 2024) ("In approaching a case, Justice O'Connor wanted to weigh all arguments and perspectives, make a decision, write an opinion explaining what facts and factors

13

justified the decision, and move on. 'Don't look back' was a favorite admonition."). Thus, for example, when Judge Jed Rakoff (S.D.N.Y.) was asked the similar question during a recent podcast interview whether there was a case he looked back on and thought perhaps he had made the "wrong call," he recounted that a colleague had advised him on his first day on the bench to "rule and roll," which meant, "Don't play Hamlet" * * * Make your decision, if you get reversed, you get reversed, if you later on change your mind, you may be able to change the opinion, but you really need to move on with the job."[4] A reasonable person would understand Judge O'Toole's response to similarly reflect that he had "moved on" to other cases on his docket, and nothing more.

Tsarnaev next asserts (Petition at 7) that Judge O'Toole offered "effusive praise for the jurors in this case" when he said, "I have to say, by the way, I'll just take the opportunity to say, the public spiritedness of these jurors was remarkable throughout, both the ones who were selected and the ones who were not." [Exh.E. at E32 (emphases in petition)]. From this, Tsarnaev asserts (Brief at 25) that "[a]n objective observer could take Judge O'Toole's fulsome praise for the 'public-spiritedness' of the seated jurors 'as a preview of a ruling on the merits' of the remand question whether those same jurors lied and suffered from disqualifying

---

[4] *See* https://davidlat.substack.com/p/judge-jed-rakoff-sdny-scotus-supreme-court-podcast-interview, at 26:26 to 27:45.

bias—especially since the judge knew of the allegations of misconduct when he delivered that praise." But the Supreme Court has recognized jury service is "an exercise of responsible citizenship by all members of the community," and one that "preserves the democratic element of the law, as it guards the rights of the parties and ensures continued acceptance of the laws by all of the people." *Powers v. Ohio*, 499 U.S. 400, 402, 407 (1991). As such, no reasonable person would understand Judge O'Toole's brief aside praising the "public-spiritedness" of the venire and petit jury to be in any way improper or disqualifying.

This conclusion is underscored by the fact that Tsarnaev had not yet filed his opening brief on appeal when the BC Law School Forum occurred – in fact, Tsarnaev did not file his opening brief until December 27, 2018, or more than *two and a half years after* the BC Law School forum took place. Tsarnaev also did not argue in his post-trial motion for judgment of acquittal or for a new trial that Jurors 138 and 286 should have been stricken for cause. [D.1490, 1509]. Tsarnaev's claim here thus necessarily depends on the following propositions being true: (1) a reasonable person would believe that among the scores of rulings Judge O'Toole made in the case, he anticipated more than two years in advance that his retention of Jurors 138 and 286 would play a central role in Tsarnaev's direct appeal; and (2) that same person would believe that Judge O'Toole intended his brief praise of the venire and petit jurors as an "anticipatory defense" of his ruling denying Tsarnaev's motion

15

to strike those jurors for cause.    No reasonable person would harbor such an

implausible view.

Tsarnaev next highlights (Petition at 7-8) that Judge O'Toole made statements

about concerns over jurors' access to social media.    In fact, Judge O'Toole noted

that "[t]here is a danger that jurors will either do independent research on issues, or

people, in the case, or that they will be involuntarily subjected by others, like

Facebook friends, to improper information, which they shouldn't have," and

explained his general approach in dealing with this concern:

> In my view, the best approach is a straightforward one.    We
> simply tell them the importance of limiting their information that will
> be the basis for their verdict to what is formally offered in the trial.
> We emphasize that it is important that all jurors have reference to the
> same fund of information, and that privately investigating issues is a
> disservice both to the parties, but also to their fellow jurors.    And then
> we hound them. Every morning, we asked if they had avoided
> extraneous information, whether sought out or imposed by someone
> else. And every evening, we reminded them of their commitment to
> abide by their duty.
>
> By the way, I have no doubt that the parties were at least spot-
> checking juror social media sites to watch for any indication of breach
> of duty, and we heard of none.
>
> But beyond exhortation and constant reminders and maybe
> check-ups, appeals to their better natures I'm not sure much can be
> done.    We ask them to do their duty, and I think they do.

[Exh.E. at E32-E33].    A reasonable person would understand from these remarks

that Judge O'Toole was primarily addressing the concerns faced by courts

16

nationwide regarding jurors' use of social media.    And that same reasonable person would also recognize that Judge O'Toole's brief aside about his experience in this case was a reference to what occurred during the trial, not the jury selection process, especially given the recollection that "[e]very morning, we asked if they had avoided extraneous information."

Tsarnaev likewise fails in his assertion (Petition at 22) that Judge O'Toole's comments ran afoul of Canon 3(A)(6), which provides:

> A judge should avoid public comment on the merits of a pending or impending action, requiring similar restraint by court personnel subject to the judge's direction and control.    This proscription does not extend to public statements made in the course of the judge's official duties, to the explanation of court procedures, or to a scholarly presentation made for purposes of legal education.

175 F.R.D. at 367.    To begin, none of the remarks discussed constitute a public comment "on the merits" of an issue in the case, including specifically Tsarnaev's claim that Jurors 138 and 286 should have been stricken for cause due to bias. Judges improperly comment "on the merits" of a case when they publicly "disclose [their] views on the factual and legal matters at the heart of the case."    *United States v. Microsoft Corp.*, 253 F.3d 34, 112 (D.C. Cir. 2001) (en banc, per curiam).    Here, Judge O'Toole spoke in an academic setting long before Tsarnaev debuted his appellate claim regarding Jurors 138 and 286, and he did not disclose his views as to any of the legal or factual matters at the heart of this case.    Judge O'Toole's

17

remarks also did not run afoul of Canon 3(A)(6) because that canon expressly states that it does not apply to "scholarly presentations made for purposes of legal education," and the BC Law School forum plainly fell within the ambit of that exception. *See In re Charges of Judicial Misconduct*, 769 F.3d 762, 795 (D.C. Cir. 2014) (even if a judge's remarks during a law school presentation constituted comments about the "merits" of an impending case, "that discussion would fall within the 'scholarly presentations' exception to Canon 3A(6)").

Nor is there any merit to Tsarnaev's assertion (Petition at 22) that Judge O'Toole's remarks contravened this Court's decision in *In re Boston's Children First*. In that case, after the plaintiffs had moved for class certification and a newspaper article reported that the district judge had refused to hear arguments on the motion, the judge wrote a letter to *The Boston Herald* to respond to what she viewed as inaccuracies, and also was quoted in an *ex parte* interview as saying that the pending litigation was a "more complex case" than an earlier one in which she had granted class certification. 244 F.3d at 165-66. This Court "read[] section 455(a) as requiring recusal based on the particular events in, and character of, a highly idiosyncratic case" because a reasonable person might view the judge's comments "as a preview of the ruling on the merits of petitioner's motion for class certification, despite the fact that defendants had not yet filed a response to that motion." *Id.* at 170-71.

This case is worlds apart from the circumstances at issue in *In re Boston's Children First*. Judge O'Toole, once again, spoke at an academic setting – he did not write a letter or give an interview to the press – and he made his remarks two and a half years before Tsarnaev debuted his appellate claim regarding Jurors 138 and 286. No reasonable person could possibly find Judge O'Toole's remarks were an "anticipatory defense" of a still unwritten appellate claim about Jurors 138 and 286.

Finally, because Judge O'Toole's remarks did not create an appearance of partiality, Tsarnaev's constitutional arguments for recusal necessarily fail.

### 2. The 2016 AO panel discussion.

On November 17, 2016, more than two years before Tsarnaev filed his opening brief in this Court, Judge O'Toole took part in the AO panel discussion along with Judge Reggie Walton (D.D.C.) and others that was entitled: "Knowledge Seminar: An Inside Look at the Jury Experience." As with the BC Law School Forum, Judge O'Toole confined his remarks to a general description of his experience presiding over multiple cases over his career, and no reasonable person would find them disqualifying.

Tsarnaev highlights (Petition at 8) that Judge O'Toole stated that judges instruct jurors not to go on social media to read about cases and avoid "any comments that other people have made," and said, "And they do. They follow

through on it."   Context is key, however, and Judge O'Toole's full remarks make

clear that he was speaking about his experience trying cases generally when asked

what he attempts to stress upon impaneled jurors:

> Well, now they know that it is their responsibility to decide the case and we try to make them appreciate the importance of that, that they stand for the community in a sense, that the parties to the case expect them to be attentive and fair-minded, and, because, most of the time, the parties are optimistic, respectively, about how they think they will do in the case, and they want to have a jury that they think is receptive to their point of view.   And so we try to impress them with that responsibility.
>
> We also stress to them that their job now is one that is going to be focused on the trial and the evidence presented in the trial.   It is very important that the jurors are making their judgment at the end of the case on the same information, and that is, the information presented in the courtroom, in the trial.   And so we impress upon them the need not to do any independent investigation, not to Google things, not to go on social media, and so on and so forth, with respect to issues in the case, but only focus on what is being said in the case, because that is the body of information that they jointly will have to consider when render a verdict.   We actually, I often tell them, they're actually being unfair, not only to the parties, but to each other, if they go beyond the scope of the evidence.   And by and large my experience has been jurors take their responsibility seriously, and they try to do, to live by those guidelines.[5]

No reasonable person would believe from these remarks that Judge O'Toole was

referencing this case specifically.

---

[5]   *See*   https://www.uscourts.gov/news/2017/03/02/inside-look-jury-experience at 34:04–35.38.

Tsarnaev also finds significant (Petition at 8-9) that Judge O'Toole noted that the jurors in this case "were exposed to some gruesome evidence and it was very powerful and very emotional," and he therefore continued their service for 90 days so that they could seek counseling if they so wished.   This is simply a statement of fact, and no reasonable person would find it improper or disqualifying.

Additionally, Judge O'Toole's remarks did not violate Canon 3(A)(6) because they were not comments "on the merits" of any issue in this case and the panel discussion was a "scholarly presentation[] made for purposes of legal education." 175 F.R.D. at 367.   Judge O'Toole's remarks likewise did not run afoul of *In re Boston's Children First* or contravene the constitutional requirement that a judge satisfy the appearance of impartiality.

### 3.    The 2023 "Criminal" podcast.

Judge O'Toole appeared in the *Criminal* podcast episode along with Justice Jill Karofsky of the Supreme Court of Wisconsin and the jury commissioner for Massachusetts that aired on May 12, 2023, and which was entitled "Did We Get It Right?"   [Exh.E. at E36-E46].   No reasonable person would find that any of Judge O'Toole's remarks during this podcast episode call his impartiality into question.

Tsarnaev highlights (Petition at 9) that "[a]s in his prior public appearances, Judge O'Toole vouched for jurors' compliance with his instructions to avoid

extraneous information."   But Judge O'Toole was speaking about his experience

trying cases generally:

> So one thing we do to check on it is just about every morning before we begin, I will say, have you all abided by my instructions not to listen to any news broadcast or talk to anybody about the facts of the case?   They all nod.

> *     *     *

> You know, I never know whether somebody cheated or not. But mostly, they take their work really seriously.   And when we say this is really important that you [confine] yourself only to what you've heard in the courtroom, and not on any private investigation you've done, any comments that other people have made, tell your family members you can't talk about it.   And they do.   They follow through on it.

[Exh.E. at E39].   No reasonable person would believe these remarks were a

reference to this case specifically.

Tsarnaev also finds significant (Petition at 10) that Judge O'Toole agreed with

the host that the emotional impact of the evidence in the case was difficult and that

he had extended their service for 90 days as a result.   [Exh.E. at E41-E42].   But,

once again, this was a statement of fact given the evidence presented in this case,

and no reasonable person would find it improper or disqualifying.

Judge O'Toole's remarks during this podcast also did not contravene Canon

3(A)(6) because they were not comments "on the merits" of this case and because

they were an "explanation of court procedures."   175 F.R.D. at 367.   Nor did they

22

run afoul of *In re Boston's Children First* or the constitutional requirement that a judge satisfy the appearance of impartiality.

### 4. Remarks during the trial and sentencing hearing.

Tsarnaev further asserts (Petition at 27) that Judge O'Toole's "statements and actions in the courtroom buttress the case for recusal." This claim fails on multiple levels.

*First*, this Court has held that "*available* claims of error not raised in an initial appeal may not be raised during subsequent appeals in the same case." *United States v. Moran*, 393 F.3d 1, 11 (1st Cir. 2004) (emphasis in original). Thus, "[w]hen a party could have raised an argument in his initial appeal, and failed to do so, he has generally waived his right to raise that argument on remand or on appeal from remand." *Labor Relations Div. of Const. Indus. of Mass., Inc. v. Teamsters Local 379*, 156 F.3d 13, 17 (1st Cir. 1998). This principle should apply here, as Tsarnaev could have argued in his direct appeal that Judge O'Toole's recusal was required based on his comments at trial or the sentencing hearing but failed to do so. He therefore should be deemed to have waived any reliance on those remarks in his recusal motion or this petition.

*Second*, this Court has stated that while public comments made by a judge *outside* court can sometimes warrant recusal, "myriad cases indicate that courts are loath to require recusal based on statements made in a judicial context (*e.g.*, in a

23

status hearing or a decision rendered from the bench), even when such statements might suggest, to some extent, pre-determination of the merits." *In re Boston's Children First*, 244 F.3d at 169 & n. 9 (citing cases). Rather than justify his position through argument, Tsarnaev merely cites *In re United States*, 666 F.2d 690 (1st Cir. 1981), a case in which this Court took "one additional step and look[ed] at the judge's conduct at trial to see whether it reveal[ed] any grounds that might cause an observer to doubt his impartiality," while at the same time recognizing that "[i]t may well be that our inquiry should end before taking this step." *Id.* at 697. This Court does not appear to have taken this approach again, and it should not do so in this case, lest the one-time exception applied in *In re United States* swallow the general rule recognized in *In re Boston's Children First.*

*Third*, even if this Court were to evaluate Judge O'Toole's in-court statements, none would lead a reasonable person to doubt his impartiality in this case. Tsarnaev first notes (Petition at 27) that during an *ex parte* lobby conference with the seated jurors, Judge O'Toole said that he and the jurors were "in this together," "on the same team," and "teammates." Again, context is key, and the government highlights in bold and italics the key words that Tsarnaev omits

> Jurors – you're real jurors now. I just wanted to come in and just personally thank you for your anticipated service in this case. This is a very important responsibility, as I'm sure you all understand. You and I are in this together. We're on the same side here. **Our side is justice. Our job is to be as fair and impartial as we possibly**

24

> ***can, and I know you all can do it because I have seen jurors over the***
> ***years do exactly this.***   It's going to be a serious responsibility.   It's
> one you can handle.   We're very confident in that.   And I just wanted
> to express that to you.

[D.1133-1, at 20 (emphasis added)].   No reasonable person would understand these

remarks as anything other than an affirmation that Judge O'Toole and the jury both

had the duty "to be as fair and impartial as we possibly can" because "[o]ur side is

justice," and that he had confidence that the jury would live up to that duty.

Tsarnaev also asserts (Petition at 27) that Judge O'Toole's remarks during the

sentencing hearing support his recusal motion.   Here, too, context is key.   Judge

O'Toole said he wanted to thank the jurors for their "exceptional service," and went

on to say the following:

> * * * Above all, we asked them, as they acted to perform their
> high duty, to be utterly fair and impartial in their deliberations.   Their
> careful verdict satisfies me that they did what they were asked to do.
> Theirs was not the only possible verdict, but it is certainly a rational
> one on the evidence.
>
> That they performed their duty so well and faithfully came as no
> surprise to me.   I've been presiding over jury trials in this state for
> more than 30 years, and I know how seriously Massachusetts jurors
> take the responsibilities of jury service. I had no doubt that we could
> select a jury for this case that would accept and perform their high duty
> conscientiously and justly.   The proof is in the pudding.

[D.1634, at 107-109].   A reasonable person would find Judge O'Toole's remarks

to be typical of the praise that judges commonly offer after a jury has performed its

civic duty and returned a rational verdict based on the evidence – even though

"[t]heirs was not the only possible verdict" – and not an "anticipatory defense" of

any possible claim that Tsarnaev might raise years later in his direct appeal.



26



27

6.    **Denial of motion for disclosure.**

Tsarnaev also argues (Petition at 3) that Judge O'Toole's treatment of his request for disclosure "does nothing to assure the public of the court's impartiality." That claim, too, lacks merit.

This Court has said that the allowance of discovery in connection with a recusal motion "is within the sound discretion of the court." *In re Martinez-Catala*, 129 F.3d 213, 220 (1st Cir. 1997).[7]  In this case, in addition to moving for Judge O'Toole's recusal, Tsarnaev broadly sought "disclosure of the dates, circumstances, and substance of all comments that this Court has made about this case, including—but not limited to—any transcripts, recordings, or notes relating to the April 6, 2016 event at Boston College Law School, and the November 7, 2017 event at the Harvard Club in Boston." as well as "the dates, circumstances, and substance of all *ex parte* communications with jurors."  [Exh.E. at E22].  Given the broad scope of this request and the lack of merit to the grounds for recusal that Tsarnaev had otherwise advanced, Judge O'Toole acted well within his discretion in denying the motion. *See Cheeves v. Southern Clays, Inc*., 797 F. Supp. 1570, 1582 (M.D. Ga. 1992)

---

[7] The recusal statute provides that "[w]here the ground for disqualification arises only under [§455(a)], waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification."  28 U.S.C. §455(e).  That situation does not apply here, as Tsarnaev did not request disclosure in connection with a potential waiver of his request for recusal.

("Either the alleged bias has already been manifested in some way within the knowledge, information or belief of the party-affiant, or the effort to depose the judge would be a classic fishing expedition.").

Furthermore, Tsarnaev cannot now attempt to narrow the scope of the information he sought in his disclosure motion to make it appear more reasonable, as "abuse-of-discretion review generally measures the decision below against 'the existing record before the district court when it ruled.'"  *Ministeri v. Reliance Std. Life Ins. Co*., 42 F.4th 14, 34 (1st Cir. 2022) (quoting *United States v. Velazquez-Fontanez,* 6 F.4th 205, 221 (1st Cir. 2021)).

### C.  <u>The Other Mandamus Grounds Do Not Support Granting the Writ</u>.

Tsarnaev also has not satisfied the other mandamus factors.   As to irreparable injury, this Court has noted that "a *clear* entitlement to recusal may itself warrant immediate relief, absent an equitable bar, because public confidence is enhanced where a clearly disqualified judge is removed swiftly."  *In re Martinez-Catala*, 129 F.3d at 217-18 (emphasis in original).   Here, because Tsarnaev has not shown that Judge O'Toole's recusal is required, he necessarily has not shown irreparable injury.

Tsarnaev also has failed to show that the equities support issuance of the requested writ.   This Court has held that "in general, a party must raise the recusal issue at the earliest moment after acquiring knowledge of the relevant facts."  *In re*

29

*United States*, 441 F.3d 44, 65 (1st Cir. 2006) (cleaned up).   This rule also applies "when the facts upon which the motion relies are public knowledge, even if the movant does not know them."   *United States v. Siegelman*, 640 F.3d 1159, 1188 (11th Cir. 2011) (per curiam).

In this case, each of the remarks on which Tsarnaev's recusal motion was based were in the public domain long before that motion was filed:

- The sealed lobby conference took place on March 3, 2015, and the transcript was filed on March 9, 2015.   [D.1133-1].

- The sentencing hearing took place on June 24, 2015, and the transcript was filed the same day.   [D.1476].

- The BC Law School forum took place on April 6, 2016, and stories about the forum appeared on the Internet the next day.[8]

- The AO panel discussion took place on November 17, 2016, and was made available on the Internet on May 7, 2017.[9]

- The *Criminal* podcast episode was aired and made available on the Internet on May 12, 2023.[10]

---

[8]  *See*  https://www.wbur.org/morningedition/2016/04/07/judge-tsarnaev-bc-law-forum, and https://www.wgbh.org/news/local/2016-04-07/tsarnaev-trial-judge-revisits-issues-of-race-the-death-penalty-and-fairness.

[9]  *See*   https://www.uscourts.gov/news/2017/03/02/inside-look-jury-experience.

[10] *See* https://thisiscriminal.com/episode-218-did-we-get-it-right-5-12-2023.

In these circumstances, Tsarnaev's recusal motion was untimely. *See, e.g.*, *United States v. Whorley*, 550 F.3d 326, 339 (4th Cir. 2008) ("The facts underlying Whorley's motion were available to him as a matter of public record at the time of his arraignment, and he has shown no cause excusing his failure to seek recusal before the eve of trial.").

To be sure, Tsarnaev argued below that he could not have filed a recusal motion earlier because his notice of appeal deprived Judge O'Toole of jurisdiction to consider such a request.    [Exh.G. at G1-G7].    But an appeal only "divests the district court of its control over those aspects of the case involved in the appeal," *Griggs v. Provident Consumer Discount Co*., 459 U.S. 56, 58 (1982) (per curiam), and a district court thus may still proceed with matters not involved in the appeal. *See Coinbase, Inc. v. Bielski*, 599 U.S. 736, 741 n.2 (2023) ("Coinbase concedes that the district court may still proceed with matters that are not involved in the appeal, such as the awarding of costs and attorney's fees.") (citing, *e.g*., 6A C. Wright, A. Miller, E. Cooper, & C. Struve, *Federal Practice and Procedure* §3949.1 (5th ed. 2019)).    In this case, Tsarnaev did not raise recusal as an issue in his direct appeal, and, while the courts admittedly are not uniform on the subject, several have held that a district court retains jurisdiction to consider a recusal motion in like circumstances. *See, e.g., Lopez Dominguez v. Gulf Coast Marine & Assocs., Inc*., 607 F.3d 1066, 1073 (5th Cir. 2010).    This rule best serves the interest in requiring

31

parties to raise a recusal issue at the earliest moment after acquiring knowledge of the relevant facts.

Accordingly, the equities do not favor granting the writ because Tsarnaev's recusal motion was untimely.  Indeed, the government is unaware of any case in which a writ of mandamus was granted requiring a district judge's recusal based on events, as here, that mostly took place years before a recusal motion was filed and while the case was pending before that very same judge.

## CONCLUSION

For these reasons, the government respectfully requests that the Court deny the petition for a writ of mandamus.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By:    /s/ *Mark T. Quinlivan*
MARK T. QUINLIVAN
Assistant U.S. Attorney

**CERTIFICATE OF COMPLIANCE WITH**
**Rule 32(a)**

**Certificate of Compliance with Type-Volume Limitation**
**Typeface Requirements, and Type Style Requirements**

1.    This response complies with the type-volume limitation of Fed. R. App. P. 21(d)(1) because this response contains **7,800** words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(f) (*i.e.*, the corporate disclosure statement, table of contents, table of citations, addendum, and certificates of counsel).

2.    This response complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Times New Roman 14 point, in Microsoft Word version 2019.

 /s/ *Mark T. Quinlivan*
MARK T. QUINLIVAN
Dated:   May 5, 2025

33

## <u>CERTIFICATE OF SERVICE</u>

I, Mark T. Quinlivan, AUSA, certify that on May 5, 2025, I served a copy of the foregoing document on the following registered participant of the CM/ECF system:

Daniel Habib, Esq.
Deirdre D. Van Dornum, Esq.
Mia Eisner-Grynberg, Esq.
Federal Defenders of New York, Inc.
52 Duane Street, 10th Floor
New York, NY 10007

David E. Patton, Esq.
Hecker Fink L.L.P.
350 Fifth Avenue, 63rd Floor
New York, NY 10118

William Fick, Esq.
Fick & Marx, L.L.P.
24 Federal Street, 4th Floor
Boston, MA 02110

/s/ *Mark T. Quinlivan*
MARK T. QUINLIVAN

No. 25-1335

===============================================

# In the United States Court of Appeals for the First Circuit

————————

### In re: Dzhokhar A. Tsarnaev, Petitioner

————————

### On Petition for Writ of Mandamus

————————

### Addendum Table of Contents

————————

1.    28 U.S.C. §455 ..................................................................... G.Add.1

2.    D. Mass. Local Rule 40.1(*I*) ............................................... G.Add.3

3.    Canon 3(A)(6), *Code of Conduct for United States Judges* ............... G.Add.4

**Editorial Notes**

AMENDMENTS

1990—Pub. L. 101–650 substituted ''under the Constitution'' for ''according to the best of my abilities and understanding, agreeably to the Constitution''.

**Statutory Notes and Related Subsidiaries**

EFFECTIVE DATE OF 1990 AMENDMENT

Amendment by Pub. L. 101–650 effective 90 days after Dec. 1, 1990, see section 407 of Pub. L. 101–650, set out as a note under section 332 of this title.

## § 454. Practice of law by justices and judges

Any justice or judge appointed under the authority of the United States who engages in the practice of law is guilty of a high misdemeanor.

(June 25, 1948, ch. 646, 62 Stat. 908.)

HISTORICAL AND REVISION NOTES

Based on title 28, U.S.C., 1940 ed., § 373 (Mar. 3, 1911, ch. 231, § 258, 36 Stat. 1161).

Changes in phraseology were made.

## § 455. Disqualification of justice, judge, or magistrate judge

(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

(3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;

(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(i) Is a party to the proceeding, or an officer, director, or trustee of a party;

(ii) Is acting as a lawyer in the proceeding;

(iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

(iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

(c) A judge should inform himself about his personal and fiduciary financial interests, and make a reasonable effort to inform himself about the personal financial interests of his spouse and minor children residing in his household.

(d) For the purposes of this section the following words or phrases shall have the meaning indicated:

(1) ''proceeding'' includes pretrial, trial, appellate review, or other stages of litigation;

(2) the degree of relationship is calculated according to the civil law system;

(3) ''fiduciary'' includes such relationships as executor, administrator, trustee, and guardian;

(4) ''financial interest'' means ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party, except that:

(i) Ownership in a mutual or common investment fund that holds securities is not a ''financial interest'' in such securities unless the judge participates in the management of the fund;

(ii) An office in an educational, religious, charitable, fraternal, or civic organization is not a ''financial interest'' in securities held by the organization;

(iii) The proprietary interest of a policyholder in a mutual insurance company, of a depositor in a mutual savings association, or a similar proprietary interest, is a ''financial interest'' in the organization only if the outcome of the proceeding could substantially affect the value of the interest;

(iv) Ownership of government securities is a ''financial interest'' in the issuer only if the outcome of the proceeding could substantially affect the value of the securities.

(e) No justice, judge, or magistrate judge shall accept from the parties to the proceeding a waiver of any ground for disqualification enumerated in subsection (b). Where the ground for disqualification arises only under subsection (a), waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification.

(f) Notwithstanding the preceding provisions of this section, if any justice, judge, magistrate judge, or bankruptcy judge to whom a matter has been assigned would be disqualified, after substantial judicial time has been devoted to the matter, because of the appearance or discovery, after the matter was assigned to him or her, that he or she individually or as a fiduciary, or his or her spouse or minor child residing in his or her household, has a financial interest in a party (other than an interest that could be substantially affected by the outcome), disqualification is not required if the justice, judge, magistrate judge, bankruptcy judge, spouse or minor child, as the case may be, divests himself or herself of the interest that provides the grounds for the disqualification.

(June 25, 1948, ch. 646, 62 Stat. 908; Pub. L. 93–512, § 1, Dec. 5, 1974, 88 Stat. 1609; Pub. L. 95–598, title II, § 214(a), (b), Nov. 6, 1978, 92 Stat. 2661; Pub. L. 100–702, title X, § 1007, Nov. 19, 1988, 102 Stat. 4667; Pub. L. 101–650, title III, § 321, Dec. 1, 1990, 104 Stat. 5117.)

HISTORICAL AND REVISION NOTES

Based on title 28, U.S.C., 1940 ed., § 24 (Mar. 3, 1911, ch. 231, § 20, 36 Stat. 1090).

Section 24 of title 28, U.S.C., 1940 ed., applied only to district judges. The revised section is made applicable to all justices and judges of the United States.

The phrase "in which he has a substantial interest" was substituted for "concerned in interest in any suit."

The provision of section 24 of title 28, U.S.C., 1940 ed., as to giving notice of disqualification to the "senior circuit judge," and words "and thereupon such proceedings shall be had as are provided in sections 17 and 18 of this title," were omitted as unnecessary and covered by section 291 et seq. of this title relating to designation and assignment of judges. Such provision is not made by statute in case of disqualification or incapacity, for other cause. See sections 140, 143, and 144 of this title. If a judge or clerk of court is remiss in failing to notify the chief judge of the district or circuit, the judicial council of the circuit has ample power under section 332 of this title to apply a remedy.

Relationship to a party's attorney is included in the revised section as a basis of disqualification in conformity with the views of judges cognizant of the grave possibility of undesirable consequences resulting from a less inclusive rule.

Changes were made in phraseology.

**Editorial Notes**

AMENDMENTS

1988—Subsec. (f). Pub. L. 100–702 added subsec. (f).

1978—Pub. L. 95–598 struck out references to referees in bankruptcy in section catchline and in subsecs. (a) and (e).

1974—Pub. L. 93–512 substituted "Disqualification of justice, judge, magistrate, or referee in bankruptcy" for "Interest of justice or judge" in section catchline, reorganized structure of provisions, and expanded applicability to include magistrates and referees in bankruptcy and grounds for which disqualification may be based, and inserted provisions relating to waiver of disqualification.

**Statutory Notes and Related Subsidiaries**

CHANGE OF NAME

Words "magistrate judge" substituted for "magistrate" in section catchline and wherever appearing in subsecs. (a), (e), and (f) pursuant to section 321 of Pub. L. 101–650, set out as a note under section 631 of this title.

EFFECTIVE DATE OF 1978 AMENDMENT

Amendment by Pub. L. 95–598 effective Oct. 1, 1979, see section 402(c) of Pub. L. 95–598, set out as an Effective Date note preceding section 101 of Title 11, Bankruptcy. For procedures relating to Bankruptcy matters during transition period see note preceding section 151 of this title.

EFFECTIVE DATE OF 1974 AMENDMENT

Pub. L. 93–512, § 3, Dec. 5, 1974, 88 Stat. 1610, provided that: "This Act [amending this section] shall not apply to the trial of any proceeding commenced prior to the date of this Act [Dec. 5, 1974], nor to appellate review of any proceeding which was fully submitted to the reviewing court prior to the date of this Act."

**§ 456. Traveling expenses of justices and judges; official duty stations**

(a) The Director of the Administrative Office of the United States Courts shall pay each justice or judge of the United States, and each retired justice or judge recalled or designated and assigned to active duty, while attending court or transacting official business at a place other than his official duty station for any continuous period of less than thirty calendar days (1) all necessary transportation expenses certified by the justice or judge; and (2) payments for subsistence expenses at rates or in amounts which the Director establishes, in accordance with regulations which the Director shall prescribe with the approval of the Judicial Conference of the United States and after considering the rates or amounts set by the Administrator of General Services and the President pursuant to section 5702 of title 5. The Director of the Administrative Office of the United States Courts shall also pay each justice or judge of the United States, and each retired justice or judge recalled or designated and assigned to active duty, while attending court or transacting official business under an assignment authorized under chapter 13 of this title which exceeds in duration a continuous period of thirty calendar days, all necessary transportation expenses and actual and necessary expenses of subsistence actually incurred, notwithstanding the provisions of section 5702 of title 5, in accordance with regulations which the Director shall prescribe with the approval of the Judicial Conference of the United States.

(b) The official duty station of the Chief Justice of the United States, the Justices of the Supreme Court of the United States, and the judges of the United States Court of Appeals for the District of Columbia Circuit, the United States Court of Appeals for the Federal Circuit, and the United States District Court for the District of Columbia shall be the District of Columbia.

(c) The official duty station of the judges of the United States Court of International Trade shall be New York City.

(d) The official duty station of each district judge shall be that place where a district court holds regular sessions at or near which the judge performs a substantial portion of his judicial work, which is nearest the place where he maintains his actual abode in which he customarily lives.

(e) The official duty station of a circuit judge shall be that place where a circuit or district court holds regular sessions at or near which the judge performs a substantial portion of his judicial work, or that place where the Director provides chambers to the judge where he performs a substantial portion of his judicial work, which is nearest the place where he maintains his actual abode in which he customarily lives.

(f) The official duty station of a retired judge shall be established in accordance with section 374 of this title.

(g) Each circuit or district judge whose official duty station is not fixed expressly by this section shall notify the Director of the Administrative Office of the United States Courts in writing of his actual abode and official duty station upon his appointment and from time to time thereafter as his official duty station may change.

(June 25, 1948, ch. 646, 62 Stat. 908; Aug. 8, 1953, ch. 376, 67 Stat. 488; Pub. L. 86–138, Aug. 7, 1959, 73 Stat. 285; Pub. L. 95–598, title II, § 215, Nov. 6, 1978, 92 Stat. 2661; Pub. L. 96–417, title V,

a case after its assignment shall be conducted before the district judge to whom it has been assigned, except as otherwise provided in these rules. This subsection does not preclude reassignment of cases by the court or the clerk, at the direction of the court, without prior notice to the parties.

**(j)** **Reassignment and Transfer of Cases.**

    **(1)** *Generally.* In the interest of justice or to further the efficient performance of the business of the court, a district judge may return a case to the clerk for reassignment, whether or not the case is related to any other case, with the approval of the chief judge, or, with respect to civil cases only and whether or not the case is related to any other case, may transfer the case to another district judge, if the other judge consents to the transfer.

    **(2)** *Transfers of Criminal Cases.* A district judge may transfer a criminal case to another district judge, with the consent of (1) the other judge, (2) the chief judge, and (3) the parties in the transferred case, in order to permit a defendant charged in multiple criminal cases to plead guilty, to stand trial, to be sentenced, or otherwise to address in a single proceeding multiple criminal cases in which that defendant has been charged.

**(k)** **Motion for Consolidation of Cases.** A motion for consolidation of two or more cases shall be made in the case first filed in this court.

**(l)** **Proceedings after Appeal.**

    **(1)** When an appellate court remands a case to this court for a new trial, the case shall be reassigned to a district judge other than the judge before whom the first trial was held.

    **(2)** In all other cases in which the mandate of the appellate court requires further proceedings in this court, such proceedings shall not be conducted before the district judge before whom the prior proceedings were conducted unless the terms of the remand require that further proceedings be conducted before the original judge or unless the judge determines that there will result a substantial saving in the time of the whole court and that there is no reason why, in the interest of justice, further proceedings should be conducted before another judge. If the judge before whom the prior proceedings were conducted does not retain the case for further proceedings, that judge shall return it to the clerk for reassignment.

**(m)** **Drawing of Civil Cases to Magistrate Judges.** The court may adopt policies and procedures permitting the assignment of certain civil cases to magistrate judges rather than to district judges in accordance with this rule. Any such policies and procedures shall include a requirement that the parties consent to the assignment, consistent with the requirements of 28 U.S.C. § 636(c) and other federal law.

**G.Add.3**

**175 F.R.D. 363**

Federal Rules Decisions
1998

Copyright 1998 by West Publishing Company

**\*367** diminishes public confidence in the integrity and impartiality of the judiciary, in violation of Canon 2A.

When a judge determines that an organization to which the judge belongs engages in invidious discrimination that would preclude membership under Canon 2C or under Canons 2 and 2A, the judge is permitted, in lieu of resigning, to make immediate and continuous efforts to have the organization discontinue its invidiously discriminatory practices. If the organization fails to discontinue its invidiously discriminatory practices as promptly as possible (and in all events within two years of the judge's first learning of the practices), the judge should resign immediately from the organization.

## CANON 3

### A JUDGE SHOULD PERFORM THE DUTIES OF THE OFFICE IMPARTIALLY AND DILIGENTLY

The judicial duties of a judge take precedence over all other activities. In performing the duties prescribed by law, the judge should adhere to the following standards:

A. Adjudicative Responsibilities.

(1) A judge should be faithful to and maintain professional competence in the law, and should not be swayed by partisan interests, public clamor, or fear of criticism.

(2) A judge should hear and decide matters assigned, unless disqualified, and should maintain order and decorum in all judicial proceedings.

(3) A judge should be patient, dignified, respectful, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity, and should require similar conduct of those subject to the judge's control, including lawyers to the extent consistent with their role in the adversary process.

(4) A judge should accord to every person who is legally interested in a proceeding, or the person's lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider *ex parte* communications on the merits, or procedures affecting the merits, of a pending or impending proceeding. A judge may, however, obtain the advice of a disinterested expert on the law applicable to a proceeding before the judge if the judge gives notice to the parties of the person consulted and the substance of the advice, and affords the parties reasonable opportunity to respond. A judge may, with consent of the parties, confer separately with the parties and their counsel in an effort to mediate or settle pending matters.

(5) A judge should dispose promptly of the business of the court.

(6) A judge should avoid public comment on the merits of a pending or impending action, requiring similar restraint by court personnel subject to the judge's direction and control. This proscription does not extend to public statements made in the course of the judge's official duties, to the explanation of court procedures, or to a scholarly presentation made for purposes of legal education.