No. 25-1335

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

_____

**In re DZHOKHAR A. TSARNAEV,**
Petitioner.

_____

**PETITION FOR REHEARING EN BANC**

_____

David E. Patton, Esq.
Court of Appeals # 1173507
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Tel.: (212) 763-0883
DPATTON@HECKERFINK.COM

William Fick, Esq.
Court of Appeals # 82686
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA 02110
(857) 321-8360
WFICK@FICKMARX.COM

Daniel Habib, Esq.
Court of Appeals # 1173462
Deirdre D. von Dornum, Esq.
Court of Appeals # 11713158
Mia Eisner-Grynberg, Esq.
Court of Appeals # 1186916
FEDERAL DEFENDERS OF NEW
   YORK, INC.
52 Duane Street, 10th Floor
New York, NY 10007
(212) 417-8769
DANIEL_HABIB@FD.ORG
DEIRDRE_VONDORNUM@FD.ORG
MIA_EISNER-GRYNBERG@FD.ORG

*Attorneys for Petitioner*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................. i

TABLE OF AUTHORITIES...................................................................... ii

INTRODUCTION ................................................................................... 1

BACKGROUND ..................................................................................... 2

1.    Voir Dire and Trial.................................................................... 2

2.    Judge O'Toole's Extrajudicial Public Comments and Other Expressions of Praise for the Jurors............................................ 3

3.    Remand, Motion for Recusal, and Mandamus Petition ............. 9

4.    The Panel Decision.................................................................. 10

ARGUMENT ........................................................................................ 10

Rehearing En Banc Is Warranted Because The Panel's Decision Conflicts With *Boston's Children First*, Authoritative Decisions Of Other Circuits, And The Exceptionally Important Constitutional And Statutory Principles Upon Which They Are Based.......................................................................... 10

CONCLUSION ..................................................................................... 16

i

# TABLE OF AUTHORITIES

## Cases

*Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813 (1986)..................................................13

*Hathcock v. Navistar Int'l Trans. Corp.*, 53 F.3d 36 (4th Cir. 1995).................4, 16

*In re Boston's Children First*, 244 F.3d 164 (1st Cir. 2001).......................... *passim*

*In re Bulger*, 710 F.3d 42 (1st Cir. 2013) .....................................................4, 12, 18

*In re Creech*, 119 F. 4th 1114 (9th Cir. 2024) ..........................................................4

*In re IBM Corp.*, 45 F.3d 641 (2d Cir. 1995) ....................................................4, 16

*In re United States*, 666 F.2d 690 (1st Cir. 1981)...........................................10, 18

*In re United States*, 441 F.3d 44 (1st Cir. 2006)......................................................18

*Ligon v. City of New York*, 736 F.3d 118 (2d Cir. 2013)....................................4, 16

*Rippo v. Baker*, 580 U.S. 285 (2017) (per curiam)..................................................13

*United States v. Cooley*, 1 F.3d 985 (10th Cir. 1995)..........................................4, 15

*United States v. Mehanna*, No. 09-cr-10017-GAO (D. Mass.) ................................6

*United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001)................. 4, 16, 20

*United States v. Tsarnaev*, 968 F.3d 24 (1st Cir. 2020)............................................4

*United States v. Tsarnaev*, 96 F.4th 441 (1st Cir. 2024) ...............................5, 7, 11

## Statutes

28 U.S.C. § 455(a) .......................................................................... 3, 14, 16, 17

## Other Authorities

Code of Conduct for United States Judges, Canon 3(A)(6) ............................ 14, 16

Code of Conduct for United States Judges, Canon 3(A)(6) cmt ............................14

Code of Conduct for United States Judges, Canon 3(C)(1)....................................14

Criminal, "Did We Get It Right?" (May 12, 2023) https://tinyurl.com/2abb4xyx ...9

Phillip Martin, *Tsarnaev Trial Judge Revisits Issues of Race, the Death Penalty, and Fairness*, WGBH.org (April 7, 2016), https://tinyurl.com/nhadt736.........6, 8

U.S. Courts, Knowledge Seminar—An Inside Look at Jury Trials (Nov. 17, 2016), https://tinyurl.com/2sxwzrkj .................................................................................8

## Rules

Fed. R. App. P. 40(b)(2)(A)......................................................................................4

Fed. R. App. P. 40(b)(2)(C)......................................................................................4

Fed. R. App. P. 40(b)(2)(D)......................................................................................4

## INTRODUCTION

Dzhokhar Tsarnaev petitions for rehearing en banc of the decision denying his petition for a writ of mandamus seeking Judge O'Toole's recusal. While Tsarnaev's appeal from the judgment sentencing him to death for his part in the Boston Marathon bombing was pending, Judge O'Toole made extrajudicial public statements praising the jurors, defending the process he used to select them, and touting the ultimate fairness of Tsarnaev's trial. So, when this Court remanded this case for an investigation into potential juror bias, Tsarnaev moved for Judge O'Toole to recuse himself, because these statements—expressing opinions about the merits of the contested issues to be decided on remand—violated the constitutional and statutory requirement that judges remain impartial in both fact and appearance.

Judge O'Toole denied the motion by electronic docket entry and a panel of this Court denied mandamus by unpublished judgment. Yet neither decision addressed the substance of Judge O'Toole's statements, or explained how controlling legal authorities that compel recusal might be distinguished. Indeed, neither decision even cited the primary authority in this Circuit, *In re Boston's Children First*, 244 F.3d 164 (1st Cir. 2001), where this Court granted mandamus and held that a district judge's far more innocuous extrajudicial public comment necessitated disqualification under 28 U.S.C. § 455(a).

Rehearing en banc is warranted. En banc consideration is "necessary to secure or maintain uniformity of the court's decisions," Fed. R. App. P. 40(b)(2)(A), because the panel decision plainly conflicts with *Boston's Children First*. The panel decision also "conflicts with ... authoritative decision[s]" of other Circuits requiring recusal based on judges' public comments. Fed. R. App. P. 40(b)(2)(C). *E.g.*, *In re Creech*, 119 F. 4th 1114 (9th Cir. 2024); *Ligon v. City of New York*, 736 F.3d 118 (2d Cir. 2013); *United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001); *Hathcock v. Navistar Int'l Trans. Corp.*, 53 F.3d 36 (4th Cir. 1995); *In re IBM Corp.*, 45 F.3d 641 (2d Cir. 1995); *United States v. Cooley*, 1 F.3d 985 (10th Cir. 1995). Finally, this proceeding involves a "question of exceptional importance." Fed. R. App. P. 40(b)(2)(D). This capital prosecution has generated publicity "unrivaled in American legal history." *United States v. Tsarnaev*, 968 F.3d 24, 42 (1st Cir. 2020). The full Court should hear this case and order recusal to "preclude any reasonable question" in the public as to "the fairness of the judicial branch." *In re Bulger*, 710 F.3d 42, 49 (1st Cir. 2013) (granting mandamus to order recusal of district judge).

## BACKGROUND

### 1.     Voir Dire and Trial

During jury selection, the defense moved to strike Jurors 138 and 286 for cause, or in the alternative, for further voir dire, because of discrepancies between the jurors' social media posts and their voir dire responses. *See United States v.*

*Tsarnaev*, 96 F.4th 441, 452 & 460–61 (1st Cir. 2024). Specifically, Juror 138 falsely "deni[ed] that any of his Facebook friends was 'commenting about this trial,'" even though "they [had] told him to play the part to get on the jury, avoid a mistrial, and send Tsarnaev [to jail] to be taken care of." *Id*. at 455. Likewise, Juror 286 falsely denied having "commented on this case" online or "sheltered in place," despite publishing Twitter posts "referring to Tsarnaev as a 'piece of garbage,'" "repeatedly invoking the 'Boston Strong' spirit," and describing being "locked down" with her family. *Id*. at 461. The district court refused to conduct further voir dire of either juror and denied the motions to strike. *See id*. at 452, 461. The jury convicted Tsarnaev and sentenced him to death. Tsarnaev appealed.

### 2.    Judge O'Toole's Extrajudicial Public Comments and Other Expressions of Praise for the Jurors

While Tsarnaev's direct appeal was pending, Judge O'Toole discussed the case in several public appearances. The defense adduced in support of its recusal motion statements from the following three events,[1] all of which came after Judge

---

[1] The defense identified a fourth public event featuring Judge O'Toole but was not able to obtain a transcript or recording—a November 7, 2017, presentation at the Harvard Club of Boston entitled "Current Issues Being Presented to the Judiciary for Decision." *See* Mandamus Pet. Exh. E (hereinafter "Exh. E"), at E10 n.1. The defense asked Judge O'Toole to disclose the substance of any remarks he made at that event, as well as any other public comments he had made about this case, but the judge refused. *See* Mandamus Pet. Exh. A, at A2; Exh. E, at E22–23.

O'Toole had learned (via the motions to strike) of the factual and legal grounds for the defense's challenges to Jurors 138 and 286:

**April 6, 2016**. Judge O'Toole participated in a public panel discussion at Boston College Law School. *See* Phillip Martin, *Tsarnaev Trial Judge Revisits Issues of Race, the Death Penalty, and Fairness*, WGBH.org (April 7, 2016), https://tinyurl.corn/nhadt736. Drawing on his experiences in this case and in *United States v. Mehanna*, No. 09-cr-10017-GAO (D. Mass.), he addressed "issues regarding the trial management that arise in what we might call high-profile cases, and particularly issues affecting jury management." *See* Exh. E, at E28. Judge O'Toole prefaced his remarks by stating: "I'm not going to talk about the merits of the *Mehanna* or the *Tsarnaev* cases. With respect to the latter in particular, I will not address the merits of any of the legal issues in the case. As you know, the case is in the very early stages of an appeal, and it would be very inappropriate for me to make any comments about any potential appellate issues." Exh. E, at E27–28.

But he went on to do just that. Judge O'Toole explained "how," in his view, "we managed the mechanics and logistics of the trials *to assure that the defendant in each case, was given what the Sixth Amendment guarantees, a public trial that is fully fair*." Exh. E, at E28 (emphasis added). After describing this case's jury selection in detail (Exh. E, at E30–32), Judge O'Toole turned to the issue that is the

focus of the remand investigation—the jurors' fitness to serve, in particular in light of their exposure to prejudicial information on social media.

He began with effusive praise for the jurors in this specific case: "I have to say, by the way, I'll just take this opportunity to say, *the public-spiritedness of these jurors was remarkable throughout*, both *the ones who were selected* and the ones who were not." Exh. E, at E32 (emphases added). As to social media, Judge O'Toole observed: "[J]urors' use of social media is a concern for courts everywhere. There is a danger that jurors will either do independent research on issues, or people, in the case, *or that they will be involuntarily subjected by others, like Facebook friends, to improper information*, which they shouldn't have." Exh. E, at E32 (emphasis added). This was the precise circumstance underlying the defense's motion to strike Juror 138 and this Court's remand order. (Social media use also was central to the motion to strike Juror 286, and to this Court's decision to remand. *See* 96 F.4th at 449–62.)

Yet Judge O'Toole told the audience that no jurors in this case engaged in problematic social media activity: "I have no doubt that the parties were at least spot-checking social media sites to watch for any indication of breach of duty, and we heard of none." Exh. E, at E33. Judge O'Toole expressed confidence in the jurors' compliance with his instructions: "We ask them to do their duty, and I think they do." Exh. E, at E33. During a question-and-answer session, Judge O'Toole "was

asked if he has any lingering questions or doubts about the Boston Marathon Bombing trial outcome. He said no. He had moved on." Martin, *supra.*

**November 17, 2016**. Judge O'Toole participated in a panel discussion sponsored by the Administrative Office of the United States Courts. U.S. Courts, Knowledge Seminar—An Inside Look at Jury Trials (Nov. 17, 2016), https://tinyurl.com/2sxwzrkj. He was introduced as having handled "many cases, but very prominently, the *Tsarnaev* Marathon bomber case." *Id*. at 00:37–00:47. Once again, Judge O'Toole expressed faith in the jurors' obedience to his instructions to avoid exposure to information on social media: "[W]e impress upon them the need not to do any independent investigation, not to Google things, not to go on social media ... with respect to issues in the case. ... And *by and large my experience has been jurors take their responsibility seriously and they try to do, to live by those guidelines*." *Id*. at 35:00–35:38 (emphasis added). He expressed sympathy for the jurors in this case, who "were exposed to some gruesome evidence and it was very powerful and very emotional." *Id*. at 45:50–46:00. The judge recounted that he had taken the unusual step of "enter[ing] an administrative order continuing their service as jurors after the verdict had been rendered and they were formally discharged ... for a period of 90 days so that they would be eligible to take part in our Employee Assistance Program and to seek counseling and help if they needed it." *Id.* at 46:00–46:32. *See* D. Ct. DE.1426.

6

**May 12, 2023**. A few months after this Court heard oral argument for the second time on appeal—an argument during which the sole issue discussed was Tsarnaev's juror-misconduct claim—Judge O'Toole appeared on the popular "Criminal" podcast, in an episode entitled "Did We Get It Right?" https://tinyurl.com/2abb4xyx. He was introduced as having "presided over the trial of Dzhokhar Tsarnaev, one of the two brothers who placed bombs near the finish line of the Boston Marathon." Exh. E, at E39.  Judge O'Toole again vouched for jurors' compliance with his instructions to avoid extraneous information: "[M]ostly, they take their work very seriously. And when we say that this is really important that you [confine] yourself only to what you've heard here in the courtroom and not on any private investigation you've done, any comments that other people have made, tell your family members you just can't talk about it. And they do. They follow through on it." Exh. E, at E39 (emphases added). Judge O'Toole also agreed that the jurors in this case "ha[d] really been through the [w]ringer," and again touted his 90-day counseling order, explaining: "Because of the emotional impact of the evidence that they'd seen and because we expected that when they no longer had each other, the jurors, they might be home by themselves and have memories of awful images that they've had .... we wanted to allow those people who thought it would be helpful to them to have some counseling about how to handle their emotions and their memories." Exh. E, at E41–42.

**In Court Statements and Ex Parte Contact**. Judge O'Toole's extrajudicial expressions of praise and affinity for the *Tsarnaev* jurors are further illuminated by similar statements he made in court. *See In re United States*, 666 F.2d 690, 697 (1st Cir. 1981) (in case of "widespread" public interest, "tak[ing] one additional step and look[ing] at the judge's conduct at trial to see whether it reveals any grounds that might cause an observer to doubt his impartiality"). For example, before the jury had been sworn, the judge met *ex parte* with the jurors and alternates and told them: "You and I are in this together. We're on the same side here." D. Ct. DE.1133, at 20. The judge said: "[T]he Supreme Court of the United States has a very interesting tradition. Before they go out on the bench to hear argument and before they conference a case, they all shake hands with each other, and I thought we'd do that because we're now teammates." D. Ct. DE.1133, at 22. Judge O'Toole then shook each juror's hand.

At sentencing, Judge O'Toole praised the jurors and alternates who had returned for the imposition of the death sentence at his *ex parte* "invitation." *See* D. Ct. DE.1476, at 3. The judge "[took] this occasion again to thank the now-former jurors for their exceptional service. ... [W]e asked them, as they acted to perform their high duty, to be utterly fair and impartial in their deliberations. Their careful verdict satisfies me that they did what they were asked to do." D. Ct. DE.1476, at 4. The court continued: "That they performed their duty so well and faithfully came as

8

no surprise to me. ... I had no doubt that we could select a jury for this case that would accept and perform their high duty conscientiously and justly. The proof is in the pudding"—that is, the jurors' verdict convicting Tsarnaev and sentencing him to death. D. Ct. DE.1476, at 4.

### 3.    Remand, Motion for Recusal, and Mandamus Petition

On direct appeal this Court vacate[d] …the district court's ruling denying Tsarnaev's motion to strike Jurors 138 and 286, and … remand[ed] the case to the district court … to conduct an appropriate investigation of the potential bias" of those jurors. *Tsarnaev*, 96 F.4th at 475. Following remand, the defense moved to recuse Judge O'Toole and requested disclosure of all of his public comments about the case, as well as any *ex parte* communications with the jurors, including those made during an untranscribed post-verdict meeting that the judge acknowledged had occurred.

By electronic docket entry, Judge O'Toole denied recusal and disclosure. Without specifically addressing any of the comments the motion identified or this Court's relevant precedents, Judge O'Toole stated: "Contrary to the defendant's characterizations and excerpted quotes, a review of the comments as a whole and in context supports the conclusion that an objective, knowledgeable member of the public would not find a reasonable basis for doubting my ability to follow my oath to faithfully apply the law, including the instructions of the First Circuit, and

impartially preside over an investigation into the voir dire answers and potential bias of the jurors." Mandamus Pet. Exh. A, at A2.

### 4.    The Panel Decision

Tsarnaev petitioned for mandamus. A panel of this Court denied relief in a two-page unpublished judgment. The panel did not address the substance of Judge O'Toole's comments or cite *Boston's Children First*. The panel stated:

> As support for his claim, petitioner points to two panel discussions and a podcast in which Judge O'Toole discussed various aspects of organizing complex jury trials and the problems associated with social media in that context. We have carefully reviewed the petition, the accompanying exhibits, and the relevant portions of the record. We conclude that petitioner has not satisfied the "exacting" standard generally applicable to mandamus petitions that seek the recusal of a district court judge. *In re Bulger*, 710 F.3d at 45–46. Accordingly, petitioner's petition for a writ of mandamus is denied.

Judgment 2. The panel also denied Tsarnaev's request for oral argument. *Id.*

### ARGUMENT

**Rehearing En Banc Is Warranted Because The Panel's Decision Conflicts With *Boston's Children First*, Authoritative Decisions Of Other Circuits, And The Exceptionally Important Constitutional And Statutory Principles Upon Which They Are Based.**

Rehearing is required because the panel's refusal to order Judge O'Toole's recusal conflicts with this Court's controlling precedent. In *Boston's Children First*, this Court granted mandamus and ordered recusal of a district judge who made a single public statement that was innocuous by comparison. Moreover, this Court admonished district judges to avoid any public comment about pending cases,

10

explaining that doing so is "unwise" and "invites trouble," especially in "newsworthy cases where tensions may be high." 244 F.3d at 169, 171. Those admonitions went unheeded here. Judge O'Toole spoke directly on the merits of the remand issues—the jurors' fitness to serve, their compliance with his instructions regarding social media use, and the fairness of this trial. In Boston, there is no higher-profile case than this capital prosecution, and none that excites stronger public opinion. And with Tsarnaev's life at stake, the need for these proceedings to be, and appear to be, impartial, is at its zenith. This Court should grant rehearing en banc, grant mandamus, and order recusal.

"The Due Process Clause 'may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way, justice must satisfy the appearance of justice.'" *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 825 (1986) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)). The Eighth Amendment applies this constitutional command with particular rigor to capital cases. *See, e.g.*, *Rippo v. Baker*, 580 U.S. 285, 287 (2017) (per curiam) (in capital case, "the Due Process Clause may sometimes demand recusal even when a judge 'ha[s] no actual bias'" (quoting *Aetna*, 475 U.S. at 825)).

Implementing this constitutional command, § 455(a) provides: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any

11

proceeding in which his impartiality might reasonably be questioned." *See also* Code of Conduct for United States Judges, Canon 3(C)(1) (same).

When it comes to the precise issue here—public comments about a pending case—the canons and precedents from across the circuits impose even tighter restrictions. Canon 3(A)(6) provides: "A judge should not make public comment on the merits of a matter pending or impending in any court," except that "[t]he prohibition on public comment on the merits does not extend to public statements made in the course of the judge's official duties, to explanations of court procedures, or to scholarly presentations made for purposes of legal education." The "admonition against public comment about the merits of a pending or impending matter continues until the appellate process is complete." Canon 3(A)(6) cmt. Where, as here, "the public comment involves a case from the judge's own court, the judge should take particular care so that the comment does not denigrate public confidence in the judiciary's integrity and impartiality." *Id*.

In *Boston's Children First*, this Court, applying § 455(a) and Canon 3(A)(6), granted mandamus and required a district court to recuse itself based on comparatively anodyne public comments. In that case, which involved a challenge to Boston's elementary school student assignment process, plaintiffs' counsel made "provocative" statements to the *Boston Herald* criticizing the district judge's views on plaintiffs' standing and plaintiffs' pending motion for class certification. 244 F.3d

12

at 165–66. Responding to what she believed to be "inaccuracies" in the *Herald's* article, the district judge explained, in an interview with the *Herald*, that the issue of standing was "more complex" in the instant case than in another case cited by plaintiffs' counsel. *Id.* at 166. Plaintiffs moved to recuse. The judge denied the motion, characterizing her statements as "explanatory and educational" "attempts to correct a record suffering from gross misrepresentations" by plaintiffs' counsel. *Id.* at 166, 168 n.8.

Based on the judge's single comment—"more complex"—this Court granted mandamus and ordered recusal. This Court observed that "[j]udges are generally loath to discuss pending proceedings with the media," that doing so was "'an unusual thing for a judge to do,'" and cautioned that "when a judge makes public comments to the press regarding a pending case, he or she invites trouble." *Id.* at 169 (quoting *Cooley*, 1 F.3d at 995). This Court concluded that recusal was necessary in light of three factors, all present here to an even greater degree. First, "the Boston school assignment program is a matter of significant local concern," and "in newsworthy cases where tensions may be high, judges should be particularly cautious about commenting on pending litigation." *Id.* at 169–70. "With such public attention to a matter, even ambiguous comments may create the appearance of impropriety that § 455(a) is designed to address. In fact, the rarity of such public statements, and the ease with which they may be avoided, make it more likely that a reasonable person

13

will interpret such statements as evidence of bias." *Id*. at 170. Second, the district judge's comments "were sufficiently open to misinterpretation so as to create the appearance of partiality," because a "reasonable person" might have construed them "as a preview of a ruling on the merits of [the plaintiffs'] motion for class certification." *Id*. And third, the judge's comments "might be interpreted as a defense of her procedural approach to this litigation," implicating the concern that "a judge's defense of her own orders, prior to the resolution of appeal, may create the appearance of partiality." *Id*. at 170. Numerous decisions from other circuits accord with *Boston's Children First* and require recusal based on judges' public comments. *Ligon*, 736 F.3d 118; *Microsoft Corp.*, 253 F.3d at 107–118; *Hathcock*, 53 F.3d 36; *IBM Corp.*, 45 F.3d 641; *Cooley*, 1 F.3d 985.

These precedents mandate recusal here. In extrajudicial public comments made during the pendency of Tsarnaev's appeal, Judge O'Toole opined about the very matters that are the subject of the remand proceedings and had been a focus of pre-trial litigation—whether seated jurors gave dishonest answers during voir dire, whether they disobeyed his instructions to avoid prejudicial information on social media, whether they suffered from disqualifying bias, and whether Tsarnaev received a fair trial. These comments contravened Canon 3(A)(6) and the binding guidance in *Boston's Children First*, and they created an appearance of partiality

14

sufficient to require disqualification under § 455(a) and the Fifth and Eighth
Amendments.

Judge O'Toole's comments, made on various occasions over the course of
many years, are far more indicative of prejudgment than the district judge's single
observation in *Boston's Children First* that the standing issue there was "more
complex" than the standing issue in another case. If that comment was disqualifying,
then surely these were. An objective observer could take Judge O'Toole's statements
that the "remarkabl[y]" "public-spirited[]" jurors in this case engaged in no
problematic social media activity "as a preview of a ruling on the merits" (244 F.3d
at 170) of the remand question whether those same jurors lied or suffered from
disqualifying bias—especially since the judge knew of the allegations of misconduct
when he delivered that assessment. Likewise, Judge O'Toole's characterization of
his jury selection procedures—"custom-designed" to "assure" that Tsarnaev got a
"fully fair" trial, Exh. E, at E28, E31—could be viewed as an anticipatory "defense
of [his] own order" denying the motion to strike and refusing further voir dire "prior
to the resolution of appeal." 244 F.3d at 170. Such comments "may create the
appearance of partiality." *Id*.

The panel did not address the substance of these comments or explain how
they could conceivably comport with governing law. And while the panel correctly
observed that "the mandamus standard is layered over the recusal standard, which

15

'requires a doubly deferential review,'" Judgment 1, this Court has not hesitated to order recusal on mandamus, in *Boston Children's First* and other cases. *E.g.*, *Bulger*, 710 F.3d at 46; *In re United States*, 441 F.3d 44, 68 (1st Cir. 2006). Where, as here, "the issue of partiality has been broadly publicized, the claim of bias cannot be labelled as frivolous and deferred to final appeal." *In re United States*, 666 F.2d 690.

Accordingly, rehearing is necessary because the panel's decision denying mandamus conflicts with *Boston's Children First* and the authoritative decisions of other circuits addressing similar facts and circumstances, and moreover, fails to promote public confidence in the judiciary in this capital case.

## CONCLUSION

This Court should grant rehearing en banc, grant mandamus, and order recusal.

David E. Patton, Esq.
Court of Appeals # 1173507
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Tel.: (212) 763-0883
DPATTON@HECKERFINK.COM

William Fick, Esq.
Court of Appeals # 82686
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA 02110
(857) 321-8360
WFICK@FICKMARX.COM

Daniel Habib, Esq.
Court of Appeals # 1173462
Deirdre D. von Dornum, Esq.
Court of Appeals # 11713158
Mia Eisner-Grynberg, Esq.
Court of Appeals # 1186916
FEDERAL DEFENDERS OF NEW
    YORK, INC.
52 Duane Street, 10th Floor
New York, NY 10007
(212) 417-8769
DANIEL_HABIB@FD.ORG
DEIRDRE_VONDORNUM@FD.ORG
MIA_EISNER-GRYNBERG@FD.ORG

*Attorneys for Petitioner*

17

**CERTIFICATE OF COMPLIANCE**

1.     This petition complies with the type-volume limit of Fed. R. App. P.

40(d)(3)(A) because, excluding the parts of the document exempted by Fed. R.

App. P. 32(f), this petition contains **3,887** words.

2.     This document complies with the typeface requirements of Fed. R.

App. P. 32(a)(5) and type style requirements of Fed. R. App. P. 32(a)(6) because

this brief has been prepared in a proportionally spaced typeface using **Microsoft**

**Word** in **14-point font** in **Times New Roman** type style.

**Dated: August 14, 2025**          /s/ Daniel Habib, Esq.
                              Attorney for Petitioner
                              **Dzhokhar A. Tsarnaev**

---

**CERTIFICATE OF SERVICE**

I hereby certify that on **August 14, 2025**, I electronically filed the foregoing

document with the United States Court of Appeals for the First Circuit by using the

CM/ECF system.  I certify that all parties or their counsel of record are registered

as ECF Filers and that they will be served by the CM/ECF system.

**Dated: August 14, 2025**          /s/ Daniel Habib, Esq.
                              Attorney for Petitioner
                              **Dzhokhar A. Tsarnaev**